**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOUG COOK et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 17-135 |
| v. | ) | |
| | ) | Hon. Nora Barry Fischer |
| GENERAL NUTRITION | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court in this matter is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint and supporting brief and declaration, (Docket Nos. 27, 28, 29); Plaintiffs' brief in opposition, (Docket No. 36); Defendant's reply, (Docket No. 41); and Plaintiffs' Notice of Entry of Order, (Docket No. 58).  Also pending before the Court is Plaintiffs' Motion for Reconsideration of the Court's Order granting Defendant's motion to compel arbitration and supporting brief and declaration, (Docket Nos. 50, 51, 52); Defendant's brief in opposition, (Docket No. 54), and Plaintiffs' reply, (Docket No. 57).  For the following reasons, Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, (Docket No. 27), is GRANTED; Plaintiffs' First Amended Complaint is DISMISSED, with prejudice; and Plaintiff's Motion for Reconsideration, (Docket No. 50), is DENIED.

## II.    Factual Background

### A.  Factual Background

This class action arises from Defendant's Gold Card Program.  The following facts are alleged in the First Amended Complaint, which the Court will accept as true for the sole purpose of deciding the pending motion.[1]

Defendant, which is one of the world's largest specialty retailers of health, wellness, and performance products, regularly and continuously offered paid membership programs for its participant-customers that were called the "Gold Card Program" and/or the "Member Price Program."  (Docket No. 23 at ¶¶ 1-2, 16).  Defendant's customers paid a $15.00 annual membership fee to participate in Defendant's Gold Card Program, through which they received benefits for a period of one year from the date of payment.  (*Id.* at ¶¶ 2, 16).  Defendant advertised and described the benefits of membership in its Member Price Program as follows:

> \*      Save up to 50% Every Day[]
> \*      Save at GNC.com and Any GNC Store in America
> \*      New, Unbeatable Low Prices on Store Puchases[]
> \*      Simplified Pricing Makes Shopping Easier
> \*      More Savings.  Every Day.  Any Time You Shop!

(*Id.* at ¶ 18).  Defendant collected $15.00 annual membership fees from the Gold Card members for many years and throughout 2015 and 2016, selling one and two year-memberships.  (*Id.* at ¶¶ 3, 16).  Defendant touted that the Gold Card Program was "a big deal" and had nearly seven million members.  (*Id.* at ¶ 17).  In 2015, the Gold Card members accounted for 79% of Defendant's company owned retail sales, and they spent approximately two times more than Defendant's other customers.  (*Id.*).

---

[1] As discussed *infra*, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014).

The terms and conditions of the Gold Card Program specify that the membership lasts for one year from the date of purchase and that the members receive discounts on eligible purchases. (*Id.* at ¶ 19). Specifically, the terms and conditions provide:

Terms and Conditions

The following Terms and Conditions govern membership in GNC's Member Price Program ("the Program"), a loyalty program brought to you by General Nutrition Corporation. Purchase or use of a membership in the Program (a "Membership") at any time binds the purchaser or user to the Terms set forth herein.
Benefits

A Membership entitles members to the following benefits:

Up to fifty percent (50%) off eligible purchases made at GNC retail stores every day for one year. Some exclusions may apply. By purchasing a Membership, you agree to the Terms and Conditions of the Program.

Additional benefits may apply. Full details are available at GNC.com. Benefits may be altered at any time with or without notice. Benefits may not be available for immediate use.

Benefits are not applicable to purchases of GNC Gift Cards, shipping and handling expenses or purchase or renewal of a Membership. Membership benefits cannot be combined with any discount or other benefits unless otherwise stated. Reimbursements will not be issued retroactively for purchases made without a Membership.

International members in the U.S. may call 877-GNC-4700 for questions regarding their benefits.

Membership

Membership fee is $15.00 unless otherwise stated. GNC reserves the right to alter the fee at any time, but changes will apply only to new or renewed memberships. Membership fee is non-refundable. GNC is not responsible for lost or stolen Membership cards.

Duration of Membership is one (1) year from the date of purchase. At the time of expiration, Membership may be renewed at the user's discretion. Membership fee is due at the time of renewal unless otherwise stated. Membership is not transferable.

Changes to the Terms

GNC reserves the right to change the Terms at any time with or without prior notice or consent.  Any change shall take effect thirty (30) days from the date of posting to GNC.com.  A copy of the Terms may be obtained any time online at GNC.com.

Fraud, Misuse or Abuse

In cases of fraud, misuse or abuse of a Membership and associated benefits, GNC reserves the right to take appropriate administrative and/or legal action.  This includes, but is not limited to, Membership forfeiture without credit, suspension of benefits associated with Membership and closure of the Membership account.

Member Communications and Privacy

Respecting member privacy is a high priority for GNC.  GNC expects members to maintain accurate and up-to-date information in connection with the Program.  Such information includes, but is not limited to, name, address, email address and telephone number.  This information will be used to notify you of necessary Program administrative announcements and may also be used to send you advertisements, product or service recommendations and other communications, in accordance with the GNC Privacy Statement.  Acceptance of the Terms also implies acceptance of the GNC Privacy Statement.  A copy of the GNC Privacy Statement may be obtained at any time online at GNC.com.

In accordance with the GNC Privacy Statement, member account access and information on how to update your account and communications preferences can be obtained by writing to:

GNC Customer Resources

info@gnc.com

DISCLAIMER OF WARRANTIES

YOU EXPRESSLY AGREE THAT PARTICIPATION IN THE PROGRAM IS AT YOUR SOLE RISK AND IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS.

GNC AND ITS PARENTS, AFFILIATES (AND THEIR FRANCHISEES AND LICENSEES) AND SUBSIDIARIES (COLLECTIVELY, "AFFILIATES") EXPRESSLY DISCLAIM ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A

PARTICULAR PURPOSE AND NON-INFRINGEMENT. GNC AND ITS AFFILIATES MAKE NO WARRANTY, EXPRESS OR IMPLIED, THAT THE PROGRAM OR ANY SERVICES, PRODUCTS, OR INFORMATION OBTAINED ON OR THROUGH THE PROGRAM WILL MEET YOUR REQUIREMENTS OR WILL BE UNINTERRUPTED, TIMELY, SECURE, OR ERROR FREE; NOR DOES GNC OR ITS AFFILIATES MAKE ANY WARRANTY, EXPRESS OR IMPLIED, AS TO THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF THE PROGRAM OR ANY SERVICES, PRODUCTS OR INFORMATION OBTAINED ON OR THROUGH THE PROGRAM OR AS TO THE ACCURACY, COMPLETENESS OR RELIABILITY THEREOF. GNC MAKES NO COMMITMENT TO UPDATE OR CORRECT ANY INFORMATION THAT APPEARS ON MEMBERSHIP MATERIALS.

YOU UNDERSTAND AND AGREE THAT ANY MATERIAL AND/OR INFORMATION SOUGHT AND OBTAINED REGARDING THE PROGRAM IS DONE AT YOUR OWN DISCRETION AND RISK, AND THAT YOU WILL BE SOLELY RESPONSIBLE FOR YOUR USE OR NONUSE OF SUCH INFORMATION WITHOUT LIMITATION. GNC AND ITS AFFILIATES MAKE NO WARRANTY REGARDING ANY GOODS OR SERVICES PURCHASED OR OBTAINED THROUGH THE PROGRAM. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM GNC OR THROUGH OR FROM ANY SERVICE OR PRODUCT SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED HEREIN. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES, SO SOME OF THE ABOVE EXCLUSIONS MAY NOT APPLY TO YOU.

LIMITATION OF LIABILITY

YOU AGREE THAT GNC AND ITS AFFILIATES SHALL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, RESULTING FROM THE USE OR THE INABILITY TO USE THE PROGRAM OR ANY SERVICES, PRODUCTS OR INFORMATION OBTAINED THROUGH THE PROGRAM, EVEN IF GNC OR ITS AFFILIATES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING, WITHOUT LIMITATION, DAMAGES FROM:

PERSONAL INJURY, COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES, ANY GOODS OR SERVICES PURCHASED OR OBTAINED OR MESSAGES RECEIVED OR TRANSACTIONS ENTERED INTO THROUGH OR FROM THE PROGRAM AND/OR LOSS OF PROFITS, USE, DATA OR OTHER INTANGIBLE LOSSES.

YOU FURTHER AGREE THAT GNC AND ITS AFFILIATES SHALL NOT BE LIABLE FOR ANY DAMAGES ARISING FROM INTERRUPTION, SUSPENSION OR TERMINATION OF THE PROGRAM, INCLUDING BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, WHETHER SUCH INTERRUPTION, SUSPENSION OR TERMINATION WAS JUSTIFIED OR NOT, NEGLIGENT OR INTENTIONAL, INADVERTENT OR ADVERTENT. SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO SOME OF THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU.

Applicable Law; Jurisdiction

Any claim relating to the Program, our Terms, and the relationship between you and us shall be governed by the laws of the United States and the Commonwealth of Pennsylvania without regard to its conflict of law provisions. You and GNC agree to submit to the personal and exclusive jurisdiction of the courts located within the Commonwealth of Pennsylvania.

General

These Terms and the GNC Privacy Statement constitute the entire agreement between you and GNC with respect to the Program; provided, however, that certain provisions of these Terms may be superseded by expressly designated legal notices or Terms which may be located elsewhere. Our failure to exercise or enforce any right or provision of these Terms shall not constitute a waiver of such right or provision by us. If any provision of these Terms if found by a court of competent jurisdiction to be invalid, the parties nevertheless agree that the court should endeavor to give effect to the parties' intentions as reflected in the provision, and the other provisions of our Terms remain in full force and effect. You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of the Program or our Terms must be filed within one (1) year after such claim or cause of action arose or be forever banned.

(Docket No. 23-1 at 1-3). Defendant drafted the terms of the Gold Card Program, and Gold Card members had no opportunity or ability to bargain for, negotiate, alter, or change the terms. (Docket No. 23 at ¶ 20).

By October 2016, Defendant knew that it was going to terminate the Gold Card Program at the end of 2016 but continued to sell Gold Card memberships for the $15.00 annual fee without

disclosing the planned termination or that it would not refund the annual fee. (*Id.* at ¶ 21). Defendant continued to sell annual memberships until December 18, 2016, and terminated the Gold Card Program on December 28, 2016. (Docket No. 23 at ¶¶ 4, 22). Despite possessing more than $24,000,000.00 in deferred revenue from the sale of Gold Card memberships, Defendant refused to honor the benefits that the Gold Card members had purchased or to refund the membership fees. (*Id.* at ¶¶ 4-5, 22-23).

On February 16, 2017, Defendant filed its Form 10-K with the Securities Exchange Commission ("SEC") for the period ending December 31, 2016, wherein Defendant stated that the Gold Card Program had been terminated on December 28, 2016. (*Id.* at ¶ 24). The Frequently Asked Questions included on Defendant's website in 2017 included, "Is the Gold Card program completely gone? Yes!" (*Id.* at ¶ 25). Beginning around the same time Defendant terminated the Gold Card Program, it began a new free program, available to everyone, whereby customers accumulate points based upon volume of purchases. (*Id.* at ¶ 26). The new program does not provide members with a direct tie to pricing discounts. (*Id.*). In its filings with the SEC, Defendant disclosed that it has instituted a new paid membership program for $39.00 per year, which is intended to generate income that the former Gold Card Program had generated. (*Id.*).

Plaintiffs include the following individuals: (1) Doug Cook, a citizen of Georgia; (2) Jody Eberhart, a citizen of Pennsylvania; (3) Barbara Swilley, a citizen of Florida;[2] (4) Matthew Dovner, a citizen of Florida; and Cody Mayfield, a citizen of California. (*Id.* at ¶¶ 6-10). They have filed this class-action lawsuit seeking to represent the following: (1) the nationwide class, which includes all Gold Card and Member Price Program members in the fifty United States and the District of Columbia with membership expirations subsequent to December 31, 2016; (2) the

---

[2] Defendant's motion to compel arbitration, (Docket No. 30), which the Court granted, (Docket No. 49), was with respect to Plaintiff Swilley. As noted above, Plaintiffs have filed a Motion for Reconsideration.

Florida subclass, which includes all Gold Card and Member Price Program members in the State of Florida with membership expirations subsequent to December 31, 2016; and (3) the California subclass, which includes all Gold Card and Member Price Program members in the State of California with membership expirations subsequent to December 31, 2016. (*Id.* at ¶ 29).

### B. Procedural Background

Plaintiffs filed this action on January 30, 2017. (Docket No 1). After Defendant filed a motion to dismiss, (Docket No. 17), Plaintiffs filed an Amended Complaint, asserting claims against Defendant for breach of contract; unjust enrichment; injunctive relief; violation of Fla. Stat. § 501.211(2); violation of Ca. Civ. Code § 1750, *et seq.*; violation of California Business and Professions Code § 17500, *et seq.*; and violation of California Business and Professions Code § 17200, *et seq.* (Docket No. 23 at ¶¶ 33-96). Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint and supporting brief and declaration on May 23, 2017, (Docket Nos. 27, 28, 29), to which Plaintiffs responded on June 13, 2017. (Docket No. 36). Defendant filed a reply on June 26, 2017, and Plaintiffs filed a Notice of Entry of Order on September 15, 2017. (Docket Nos. 41, 58). Defendant also filed a motion to compel arbitration as to Plaintiff Swilley on May 25, 2017. (Docket No. 30). After considering the parties' positions, the Court granted the motion to compel on August 1, 2017. (Docket No. 49). A week later, Plaintiffs filed a Motion for Reconsideration and included a supporting brief and declaration. (Docket Nos. 50, 51, 52). On August 22, 2017, Defendant filed a response in opposition, to which Plaintiffs replied on August 28, 2017. (Docket Nos. 54, 57). Hence, these matters are now ripe for disposition.

### III. Legal Standard

### C. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid*, 740 F.3d at 122 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Twombly*, 550 U.S. at 556-57; *Iqbal*, 556 U.S. at 678.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual

9

allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### D. Motion for Reconsideration

"Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure are granted sparingly '[b]ecause federal courts have a strong interest in finality of judgments.'" *Jacobs v. Bayha*, 2011 WL 1044638, at *2 (W.D. Pa. Mar. 18, 2011) (quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 938, 943 (E.D. Pa. 1995)) (emphasis added). "Because of the interest in finality, at least at the district court level ... the parties are not free to relitigate issues the court has already decided," *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)), or to raise arguments that a party had the opportunity to present before the Court's decision, *see United States v. Dupree*, 617 F.3d 724, 732–33 (3d Cir. 2010) (quotations omitted). Rather, the purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). The moving party bears a heavy burden to demonstrate that an order should be reconsidered and the Court will only grant such a motion if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. Cigna Reinsurance*

*Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

**IV. Discussion**

    A. Defendant's Motion to Dismiss

        1. Plaintiffs' Breach of Contract Claim

Defendant argues that Plaintiffs' breach of contract claim must be dismissed because it reserved the right to terminate the Gold Card Program. (Docket No. 28 at 14-19). In support of its argument, Defendant attaches a copy of the Gold Card Terms and Conditions that governed the Gold Card Program and were in effect on or around January 2015 until December 28, 2016.[3] (Docket No. 29 at 4-6). Defendant also attaches a copy of the GNC Gold Card that was distributed in Pennsylvania, California, and Florida in 2015 and 2016. (*Id.* at 8). Defendant asserts that because the Terms and Conditions and the physical Gold Card expressly permitted it to alter or terminate the membership benefits at any time, Plaintiffs cannot establish a breach of contract. (Docket No. 28 at 16-18). In response, Plaintiffs argue that the physical GNC Gold Card cannot be considered because it was not attached to their Amended Complaint. (Docket No. 36 at 8). Plaintiffs further contend that they have pled a plausible claim that Defendant breached its duty of good faith by terminating the Gold Card Program prior to the end of their membership periods. (*Id.* at 9-10). In reply, Defendant insists that the contractual provisions at issue are not contradictory and that, therefore, the implied covenant of good faith and fair dealing cannot be used to override the same. (Docket No. 41 at 6-8).

As an initial matter, the Court first notes that the parties agree that Pennsylvania law applies to Plaintiffs' breach of contract claim and that no choice-of-law analysis is necessary regarding same. (Docket No. 28 at 14; Docket No. 36 at 15 n.5). Second, the Court will consider

---

[3] The Court has set forth the Gold Card Terms and Conditions above.

the physical Gold Card that Defendant attached to its response but will not convert Defendant's motion to a motion for summary judgment. To this end, it is well that settled that in deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); *Pension Benefit Guaranty Corp. v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993). "However, a plaintiff's failure to attach or cite documents explicitly relied on or integral to the complaint does not preclude the court, when considering a motion to dismiss, from reviewing the text of these extrinsic documents." *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 780-81 (W.D. Pa. 2000). Indeed, "[c]ourts may consider a document that a defendant attaches as an exhibit to a motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based on the document." *Id.* at 781. This exception to the general rule wherein courts convert a motion to dismiss to one for summary judgment when considering extrinsic evidence "is premised on the theory that when a complaint relies on a document, the plaintiff is clearly on notice as to its contents and the need for an opportunity to refute the evidence is diminished." *Id.* Here, it is clear that Plaintiffs' claims are based upon the Gold Card, the authenticity of the Gold Card is undisputed, and Plaintiffs were clearly on notice as to the Gold Card's contents. Thus, the Court will consider the Gold Card without converting Defendant's motion to dismiss to one for summary judgment.

Turning to Defendant's arguments, it is well established that under Pennsylvania law, a claim for breach of contract has three elements: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Kaymark v. Bank of Am.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). The essential elements of a contract will be found to

exist where: (1) "both parties have manifested an intent to be bound by the terms of the agreement," (2) "the terms are sufficiently definite," and (3) "whether consideration existed." *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. Ct. 1995). The agreement shall be considered valid and binding if all three elements exist. *Id.* "When a written contract is clear and unequivocal its meaning must be determined by its contents alone." *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973) (internal quotations omitted).

Here, Defendant concedes that the parties entered into an enforceable contract, as the Gold Card provides that "[y]our signature constitutes acceptance of the terms and conditions listed hereon. The GNC Gold Card and other additional materials are the sole property of GNC," and the Gold Card Program's Terms and Conditions provide that "[t]he following Terms and Conditions govern membership in GNC's Member Price Program (the 'Program'), a loyalty program brought to you by General Nutrition Corporation. Purchase or use of a membership in the Program (a 'Membership') at any time binds the purchaser or user to the Terms set forth herein." (Docket No. 28 at 15-16; Docket No 29 at 4, 8; *see also* Docket No. 23-1 at 1). Thus, there is an enforceable contract between the parties.

Despite the existence of a contract in this matter, Plaintiffs have not, and cannot, identify a breach of the contract by Defendant. Plaintiffs allege that Defendant breached the contract by terminating the Gold Card Program without providing full membership benefits or refunds of membership fees. (Docket No. 23 at ¶¶ 33-40). In support of their allegations, Plaintiffs point to the benefits of membership in Defendant's Member Price Program, such as discounts, low prices, and simplified pricing, and to the provision of the Terms and Conditions stating that members would receive "[u]p to fifty percent (50%) off eligible purchases made at GNC retail stores every day for one year." (*Id.* at ¶¶ 18-19). Plaintiffs, however, do not acknowledge the contractual

provisions that permit Defendant to alter the membership program. As to benefits, the Terms and

Conditions expressly state:

> Benefits
>
> A Membership entitles members to the following benefits:
>
> Up to fifty percent (50%) off eligible purchases made at GNC retail stores every day for one year. Some exclusions may apply. By purchasing a Membership, you agree to the Terms and Conditions of the Program.
>
> Additional benefits may apply. Full details are available at GNC.com. *Benefits may be altered at any time with or without notice.* Benefits may not be available for immediate use.

(Docket No. 29 at 4; *see also* Docket No. 23-1 at 1 (emphasis added)). Defendant also reserved

the right to terminate the Gold Card Program:

> YOU FURTHER AGREE THAT GNC AND ITS AFFILIATES SHALL NOT BE LIABLE FOR ANY DAMAGES ARISING FROM INTERRUPTION, *SUSPENSION OR TERMINATION OF THE PROGRAM*, INCLUDING BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, WHETHER SUCH INTERRUPTION, SUSPENSION OR TERMINATION WAS JUSTIFIED OR NOT, NEGLIGENT OR INTENTIONAL, INADVERTENT OR ADVERTENT. SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO SOME OF THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU.

(Docket No. 29 at 6; *see also* Docket No. 23-1 at 3 (emphasis added)). The physical Gold Card

provides:

> Your GNC Gold Card is good at participating GNC stores and www.gnc.com. Your GNC Gold Card discount or benefits cannot be combined with any other discount or benefits.
>
> *GNC reserves the right to vary, change or discontinue the privileges granted by this card without prior notice.* This card is valid for one year and expires on the date shown above. Card is not transferable. *The card purchase price is nonrefundable.*

(Docket No. 29 at 8 (emphasis added)).

Given these express terms, which are clear and unambiguous, Plaintiffs cannot establish that Defendant breached its contractual obligations. The Court's conclusion is well supported by established law within the Third Circuit. *See, e.g.*, *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 478-79 (D.N.J. 2014) (dismissing breach of contract claim where the express contractual terms of a mileage awards program permitted the defendant to modify, cancel, or limit the program); *Kemmerer v. ICI Ams., Inc.*, 70 F.3d 281, 287-88 (3d Cir. 1995) (recognizing that executive deferred compensation plans when "an explicit right to terminate or amend after the participants' performance is reserved"); *In re Unisys Corp. Retiree Medical Benefit ERISA Litig.*, 58 F.3d 896, 903-04 (3d Cir. 1995) (granting partial motion for summary judgment where the employer reserved its right to terminate the plan). *See also Karmilowicz v. Hartford Fin. Servs. Group*, 494 F. App'x 153, 156 (2d Cir. 2012) (affirming the District Court's dismissal of a breach-of-contract claim where the compensation plan included a provision reserving the defendant's right to amend or terminate "the Old Plan" at any time); *Johnson v. United Airlines*, No. 14-CV-646, 2016 U.S. Dist. LEXIS 68874, at *24-29 (S.D. Tex. Apr. 20, 2016) (holding that the plaintiff's breach-of-contract claim failed where the terms and conditions of the MileagePlus Program expressly gave the defendant the right to terminate the program and/or to change the program's terms and conditions at any time); *Riverside Mktg., LLC v. SignatureCard, Inc.*, 425 F. Supp. 2d 523, 530-33 (S.D.N.Y. 2006) (finding that the plaintiff's breach-of-contract claim failed where the terms of the contract permitted either party to terminate the agreement for any reason or no reason).

The Court finds inapposite Plaintiffs' argument that the contractual terms between the parties are ambiguous because Defendant "expressly promised that the membership would last

for one year," while also "reserv[ing] the right to alter the benefits or to discontinue the privileges granted by the card." (Docket No. 36 at 8 (internal quotations and alterations omitted)). As Plaintiffs note, "'all provisions in [an] agreement will be construed together and each will be given effect' because a court 'will not interpret one provision . . . in a manner which results in another portion being annulled.'" *Pac. Emplrs. Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012) (quoting *Lesko v. Frankford Hosp. Bucks-County*, 11 A.3d 917, 921 (Pa. 2011)). Despite relying upon this well-settled principle, Plaintiffs maintain, without providing any authority, that the Court should *annul* the language giving Defendant the discretion to alter the benefits of the Gold Card Program. (Docket No. 36 at 8-9). However, in construing the contractual provisions together, it is clear that the provision granting Defendant the discretion to alter the program conditions the one-year membership provision. Thus, the contract affords Defendant the discretion to alter or terminate the Gold Card Program's benefits, which last for one year in the absence of Defendant exercising its discretion. *See* Docket No. 23-1 at 3 ("YOU FURTHER AGREE THAT GNC AND ITS AFFILIATES SHALL NOT BE LIABLE FOR ANY DAMAGES ARISING FROM INTERRUPTION, SUSPENSION OR TERMINATION OF THE PROGRAM, INCLUDING BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, WHETHER SUCH INTERRUPTION, SUSPENSION OR TERMINATION WAS JUSTIFIED OR NOT, NEGLIGENT OR INTENTIONAL, INADVERTENT OR ADVERTENT.").

Plaintiffs' argument with respect to the implied covenant of good faith and fair dealing is likewise meritless. Again without providing authority, Plaintiffs contend that Defendant "breached its duty of good faith and acting reasonably when it terminated the Plaintiffs' rights before the end of their membership periods and kept all the money." (Docket No. 36 at 9-10).

Pursuant to the implied covenant of good faith and fair dealing, "the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do." *John B. Conomos, Inc. v. Sun Co.*, 831 A.2d 696, 706 (Pa. Super. Ct. 2003) (internal quotations omitted). However, the implied covenant of good faith and fair dealing applies only "*[i]n the absence of an express provision*." *Id.* (internal quotations omitted) (emphasis added). As discussed at length above, the contractual provisions at issue here are express, clear, and unambiguous. Thus, the implied covenant of good faith and fair dealing is inapplicable in this matter. Accordingly, the Court will grant Defendant's motion to dismiss as to Plaintiffs' breach-of-contract claim.[4]

At Count III of their First Amended Complaint, Plaintiffs assert a claim against Defendant for injunctive relief because "[Defendant] breached its duties to [P]laintiffs." (Docket No. 23 at ¶ 46). It is well settled that "injunctive relief is not a separate type of claim, but rather a form of relief, and as such, should not be designated as a separate count in the Complaint." *Benhur v. Madavaram*, No. 15-CV-6826, 2015 U.S. Dist. LEXIS 148265, at *16 (D.N.J. Nov. 2, 2015) (citing *Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 560 (E.D. Pa. 2011) ("The relief a plaintiff seeks, and the claims he asserts, are thus conceptually distinct components of a complaint, and there is no need for a plaintiff to devote a separate count of a complaint to a request for a certain type of relief.")); *see also Chruby v.*

---

[4] The Court notes that it has considered Plaintiffs' Notice of Entry of Order in Subsequently Filed Action, filed on September 15, 2017, wherein Plaintiffs have advised the Court that the District Court in the Southern District of California denied Defendant's motion to dismiss the plaintiffs' breach-of-contract claims. (Docket No. 58). The court also denied Defendant's motion to transfer the case to this Court. *Santich et al. v GNC Holdings, Inc.*, 17-CV-1320 (S.D. Cal. Sept. 8, 2017). Having reviewed the district court's decision, which is non-precedential and non-binding, the Court finds that, based upon Plaintiffs' allegations and the contractual provisions at issue, dismissal of Plaintiffs' breach-of-contract claim is warranted here.

*Kowaleski*, 534 F. App'x 156, 160 n.2 (3d Cir. 2013) ("[A]n injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary").

While Plaintiffs' claim for injunctive relief must be dismissed because it is designated as a separate claim in their First Amended Complaint, it must also be dismissed because it is based upon Plaintiffs' breach-of-contract claim. (*See* Docket No. 23 at ¶ 46 (stating that Plaintiffs seek injunctive relief because "[Defendant] breached its duties to [P]laintiffs.")). Given that the Court will dismiss Plaintiffs' breach-of-contract claim, their claim for injunctive relief must be dismissed as moot. *See, e.g.*, *Mahmood v. Nat'l Bd. of Med. Examiners*, No. 12-CV-1544, 2012 U.S. Dist. LEXIS 86837, at *13 n. 8 (E.D. Pa. June 21, 2012) (dismissing the plaintiff's motion for preliminary injunction as moot where the underlying claim was dismissed); *Temple Univ. Commonwealth Sys. Higher Educ. v. Brown*, No. 00-CV-1063, 2001 U.S. Dist. LEXIS 1937, at *38 (E.D. Pa. Feb. 23, 2001) (same); *see also Frank B. Fuhrer Wholesale Co. v. Millercoors LLC*, No. 13-CV-1155, 2013 U.S. Dist. LEXIS 155253, at *27 (W.D. Pa. Oct. 30, 2013) (granting the defendants' motion to dismiss and dismissing as moot the plaintiff's request for injunctive relief).[5]

---

[5] The Court further notes that even if Plaintiffs' breach-of-contract claim remained, their claim for injunctive relief would fail for lack of standing because they cannot demonstrate that they are likely to find themselves in the same or similar circumstances giving rise to the violation and that they are likely to again be subjected to the violation. *Travelers Social Club v. City of Pittsburgh*, 685 F. Supp. 929, 932 (W.D. Pa. 1988); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way.") (internal quotations omitted). Because the Gold Card Program ended in December 2016, Plaintiffs cannot establish that they are likely to again be subjected to future harm. *See, e.g.*, *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 224 (3d Cir. 2012) (holding that the plaintiffs, who were no longer the defendant's customers, lacked standing because they had no cognizable interest in the prospective relief sought in the complaint); *Lundy v. Hochberg*, 91 F. App'x 739, 744-45 (3d Cir. 2003) (concluding that the plaintiff, who was no longer in partnership with the defendant, lacked standing because he would not suffer a future injury); *Burns v. Alexander*, 776 F. Supp. 2d 57, 77 (W.D. Pa. 2011) (dismissing claim for injunctive relief because the plaintiff had no basis for establishing her standing to seek prospective relief against the defendant. Along with their inability to demonstrate that they will suffer future harm, Plaintiffs allege strictly economic injury and do not plead entitlement to any equitable relief. Thus, because their injuries are compensable by monetary damages, Plaintiffs are not entitled to injunctive relief. *See, e.g.*, *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) ("[A]n injury measured in solely monetary terms cannot constitute irreparable harm."); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d

2. Plaintiffs' Unjust Enrichment Claim

Defendant argues that Plaintiffs' unjust enrichment claim must be dismissed because the parties do not dispute the existence of the contract which governs their relationship. (Docket No. 28 at 20; Docket No. 41 at 8). In response, Plaintiffs contend that they may simultaneously pursue their alternative claims for breach of contract and unjust enrichment. (Docket No. 36 at 11-12).

Under Pennsylvania law, the elements necessary to prove that a party is entitled to recovery under the equitable doctrine of unjust enrichment are: (1) benefits were conferred on one party by another party; (2) the appreciation of such benefits by the recipient; and (3) the acceptance and retention of those benefits under circumstances that are inequitable for the recipient to retain those benefits without payment of value. *Lauren W. ex rel. Jean W. V. Deflaminis*, 480 F.3d 259, 277 (3d Cir. 2007). Additionally, under Pennsylvania law, a claim of unjust enrichment is unavailable where the relationship, rights and duties of the parties are premised upon a written agreement. *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619-20 (E.D. Pa., 2003) (citing *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969); *Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa. 1945)). In fact, "[w]here an express contract governs the relationship between the parties, a party's recovery is limited to the amount provided in the express contract, and where the contract fixes the value of the services involved, there can be no recovery under a theory of quantum meruit." *See Combustion Sys. Servs. v. Schuylkill Energy Res.*, No. 92-CV-4228, 1993 U.S. Dist. LEXIS 19207, at *16 (E.D. Pa. Dec. 15, 1993).

1137, 1145 (3d Cir. 1982) ("We have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."); *Miami Dolphins, Ltd. v. Newson*, 783 F. Supp. 2d 769, 780 (W.D. Pa. 2011) (granting motion to dismiss claim for injunctive relief where the plaintiff had a full and sufficient remedy at law).

As discussed in detail above, there is an express and enforceable contract between the parties in this matter. Accordingly, Plaintiffs' unjust enrichment claim, despite being pled in the alternative, must be dismissed. *See, e.g.*, *Sköld v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 599 (E.D. Pa. 2015) ("Only if there were a question as to the validity of the contract in question could [the plaintiff] proceed on both theories in the alternative against [the defendant].") (internal quotations omitted); *ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*, 2014 U.S. Dist. LEXIS 162899, at *13-14 (W.D. Pa. Oct. 22, 2014) (granting motion to dismiss unjust enrichment claim in the alternative where the parties did not dispute that the agreement was valid and enforceable); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012) (granting motion to dismiss unjust enrichment claim because it was undisputed that the mortgage contract was valid and enforceable) (listing cases which hold that plaintiff may plead unjust enrichment in the alternative only where the parties dispute whether a valid, enforceable written contract exists); *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*, No. 10-CV-6087, 2011 U.S. Dist. LEXIS 83582, at *10-11 (E.D. Pa. July 29, 2011) (dismissing a claim for unjust enrichment where neither party contested the validity of contract); *Sheinman Provisions, Inc. v. Nat'l Deli, LLC*, No. 08-CV-453, 2008 U.S. Dist. LEXIS 54357, at *12-13 (E.D. Pa. July 15, 2008) (granting motion to dismiss unjust enrichment claim because "the agreement at issue is a fully integrated contract and, by its terms, it governs the entire relationship of the parties").

3. Plaintiffs' Consumer Protection Claims

Plaintiffs assert consumer protection claims against Defendant for its alleged violations of Fla. Stat. § 501.211(2); Ca. Civ. Code § 1750, *et seq.*; California Business and Professions Code

§ 17500, *et seq.*; and California Business and Professions Code § 17200, *et seq.* Defendant argues that because Pennsylvania law governs the parties' agreement, Plaintiffs' claims under California's and Florida's respective consumer protection laws are barred. (Docket No. 28 at 23). In response, Plaintiffs contend that the choice-of-law provision is inapplicable because it was not bargained-for and based upon Sections 187 and 145(2)(a)-(d) of the Restatement (Second) Conflict of Laws. (Docket No. 36 at 16-23). In reply, Defendant maintains that the choice-of-law provision is enforceable because there is no genuine conflict between Pennsylvania law and California and Florida law. (Docket No. 41 at 11-12).

As an initial matter, the Court reiterates the following contractual language that was set forth above:

Applicable Law; Jurisdiction

Any claim relating to the Program, our Terms, and the relationship between you and us shall be governed by the laws of the United States and the Commonwealth of Pennsylvania without regard to its conflict of law provisions. You and GNC agree to submit to the personal and exclusive jurisdiction of the courts located within the Commonwealth of Pennsylvania.

(Docket No. 23-1 at 3).

This Court's jurisdiction rests on diversity of the parties. 28 U.S.C. § 1332(a)(1). A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As such, in determining the appropriate choice of law, this Court applies Pennsylvania's choice-of-law rules. Under Pennsylvania law, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 55 (3d Cir. 1994).

Pennsylvania courts have adopted Section 187 of the Restatement (Second) Conflict of Laws, which honors choice of law clauses unless: (a) "the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice," or (b) "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(a)-(b). Pennsylvania courts have held that a choice-of-law provision in a contract will be given effect so long as the transaction bears "a reasonable relationship to the state whose law is governing." *Novus Franchising Inc. v. Taylor*, 795 F. Supp. 122, 126 (M.D. Pa. 1992) (citing *Churchill Corp. v. Third Century, Inc.*, 578 A.2d 532, 537 (Pa. Super. Ct. 1990); *Instrumentation Assoc. Inc. v. Madsen Elecs. Ltd.*, 859 F.2d 4, 5-6 (3d Cir. 1988)). Thus, Pennsylvania courts will uphold contractual choice-of-law provisions where the parties have sufficient contacts with the chosen state. *Jaskey Fin. and Leasing v. Display Data Corp.*, 564 F. Supp. 160 (E.D. Pa. 1983). To this end, the United States Court of Appeals for the Third Circuit has explained that "Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests." *Kruzits*, 40 F.3d at 56.

Here, Pennsylvania has a substantial relationship to the parties, as Defendant "is a Pennsylvania corporation with its principal place of business in Pennsylvania, and [it] has an interest in uniformity in dealings with its [customers] who are scattered in numerous states throughout the country." *Hopkins v. GNC Franchising, Inc.*, No. 05-CV-1510, 2006 U.S. Dist. LEXIS 59438, at *10-11 (W.D. Pa. Jan. 13, 2006); *see also Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 416 (W.D. Pa. 2005) ("Pennsylvania has a substantial relationship to the parties, and plaintiffs do not argue to the contrary: the GNC defendants are Pennsylvania corporations

22

with their principal place of business in Pennsylvania, and these Pennsylvania defendants have an interest in uniformity in dealings with their franchisees who are scattered in numerous states throughout the country."), *aff'd*, *Bishop v. GNC Franchising LLC*, 248 F. App'x 298 (3d. Cir. 2007). Plaintiffs do not argue that the application of Pennsylvania law "would be contrary to some fundamental policy of Florida [or California] that would otherwise protect them." *Hopkins*, 2006 U.S. Dist. LEXIS 59438, at *11. Thus, the Court "sees no reason to disturb the parties' contractual choice of laws, and finds that, because the claim[s] arise[] from operation of [their] agreement, the state claim[s] will be governed by the laws of the Commonwealth of Pennsylvania." *Id.*; *see also Bishop*, 403 F. Supp. 2d at 416 ("[T]he Court sees no reason to disturb the parties' contractual choice of law, and holds that, because all of the claims herein arise from operation of the franchise agreements, the state claims will be governed by the laws of the Commonwealth of Pennsylvania."); *GNC Franchising, Inc. v. O'Brien*, 443 F. Supp. 2d 737, 743 (Pa. W.D. 2006) (considering the state claims implicated in the plaintiff's motion to dismiss in accordance with the Pennsylvania law because "[a]s GNC is a Pennsylvania corporation, the Commonwealth has a substantial relationship with Plaintiff").

Courts applying Pennsylvania law routinely hold that plaintiffs may not pursue out-of-state consumer protection claims. As discussed above, Plaintiffs have not identified any "fundamental policy" of Florida or California that would be defeated by applying the choice-of-law provision to preclude the non-Pennsylvania consumer protection claims. Thus, in accordance with well-settled law providing that "a claim under an out-of-state consumer protection statute may not be asserted when the parties have contractually agreed that Pennsylvania law applies to their relationship," Plaintiffs' consumer protection claims will be dismissed. *Cottman Transmission Sys., LLC v. Kershner*, 492 F. Supp. 2d 461, 472 (E.D. Pa. 2007) (dismissing the

plaintiffs' twelve out-of-state consumer protection claims). *See also Hopkins*, 2006 U.S. Dist. LEXIS 59438, at *8-11 (enforcing Pennsylvania choice-of-law clause and dismissing the plaintiff's claim under Florida's consumer protection statute); *Bishop*, 403 F. Supp. 2d at 415-16 (dismissing the plaintiffs' Indiana state-law claims because all of their claims arose from the operation of franchise agreements that were governed by Pennsylvania law).[6]

### 4. Leave to Amend

The Court's final inquiry is whether the dismissal of Plaintiffs' First Amended Complaint should be with prejudice or without prejudice, granting Plaintiffs leave to amend their complaint once again. Plaintiffs previously exercised their right to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). In their response to Defendant's Motion to Dismiss, Plaintiffs suggested that they could cure the thirty-day notice required under California's Consumers Legal Remedies Act by filing another Amended Complaint. (Docket No. 36 at 27-28). As discussed above, however, Plaintiffs' consumer protection claims are barred by Pennsylvania law. Further, Plaintiffs have not supplied the Court with a proposed Second Amended Complaint. *See, e.g.*, *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) ("[A] 'bare request in an opposition to a motion to dismiss — without any indication of the particular grounds on which amendment is sought . . . — does not constitute a motion within the contemplation of Rule 15(a).'") ((quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)); *McWreath v. Range Res. - Appalachia, LLC*, No. 15-1371, 2016 U.S. App. LEXIS 5755, at *5 (3d Cir. Mar. 29, 2016) ("[T]he failure to submit a draft

---

[6] The Court again notes that it has considered Plaintiffs' Notice of Entry of Order in Subsequently Filed Action, wherein Plaintiffs have advised the Court that the District Court in *Santich* granted Defendant's motion to dismiss the plaintiffs' California consumer claims for failure to satisfy the applicable pleading standard, but also granted the plaintiffs leave to amend. (Docket No. 58). The Court is unpersuaded by *Santich*, which is non-precedential and non-binding, and will apply the well-settled law within the Third Circuit.

amended complaint 'is fatal to a request for leave to amend.'") (quoting *Zizic*, 728 F.3d at 243).

In any event, leave to amend may be denied if an amendment would be futile. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."); *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[A] district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."). For the detailed reasons discussed above, all of Plaintiffs' claims must be dismissed, and Plaintiffs cannot cure the deficiencies as to each claim by filing yet another Amended Complaint. Accordingly, Plaintiffs' First Amended Complaint will be dismissed, with prejudice.

B.  Plaintiffs' Motion for Reconsideration

Plaintiffs have filed a Motion for Reconsideration of the Court's decision granting Defendant's motion to compel arbitration as to Plaintiff Swilley.  (Docket No. 50).  Plaintiffs fail to meet the standard articulated above as to motions for reconsideration.  Further, given that the Court will dismiss, with prejudice, Plaintiffs' First Amended Complaint, their Motion for Reconsideration is rendered moot.

V.    **Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, (Docket No. 27).  The Court DISMISSES, with prejudice, Plaintiffs' First Amended Complaint.  The Court DENIES Plaintiffs' Motion for Reconsideration, (Docket No. 50).  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record